**STATE of Missouri, Respondent,**

v.

**Jerry HAMPTON, Appellant.**

**No. 53354.**

Supreme Court of Missouri,

Division No. 1.

June 10, 1968.

*Motion for Rehearing or for Transfer to Court En Banc Denied July 8, 1968.*

Norman H. Anderson, Atty. Gen., Richard Dorr, Asst. Atty. Gen., Jefferson City, for respondent.

William H. Webster, Michael W. O'Reilly, St. Louis, for appellant.

HOLMAN, Judge.

Defendant was charged with the offense of stealing property having a value of fifty dollars or more. See §§ 560.156 and 560.161, subd. 1(2) [1]. The information also charged a prior felony conviction under the provisions of § 556.280. The jury found defendant guilty of the offense charged and the court fixed his punishment at imprisonment in the penitentiary for a term of three years. Defendant has appealed from the ensuing judgment.

Lottie Rosen testified that she was employed as a switchboard operator by Royal Paper Company in an office located on the second floor of the building at 8th and Spruce Streets in St. Louis, Missouri; that on March 20, 1967, at about 3:15 p. m., she came from behind a partition near the switchboard and saw a young man grab her purse and jump over the counter; that she screamed, and two salesmen ran out from the back room and pursued him (this person was later identified as defendant and will be hereinafter sometimes referred to as such); that she next saw defendant at "the court building" or "police station" about a half hour later and identified him as the person who took her purse; that her purse was returned to her by one of the salesmen, and her billfold containing $66.30, which was in the purse when it was taken, was returned to her by the police department. Miss Rosen identified defendant in court as the person who took her purse.

James McCrady testified that he was a sergeant with the military police; that on March 20, 1967, at about 3:30 p. m., he was driving on Spruce, accompanied by Specialist Dwight E. Murphy; that he saw a man run out of the Royal Paper Company building, being pursued by some men who shouted that he had stolen a lady's purse; that he saw this man drop a purse; that Specialist Murphy got out of the car and pursued him on foot; that they then drove their car to 10th and Spruce Streets where they apprehended the defendant and hand-

---

1. All statutory references are to RSMo 1959, V.A.M.S.

cuffed him; that shortly thereafter a city policeman arrived and they delivered custody of the defendant to him. This witness identified the defendant in the courtroom as the person he had taken into custody at the time of the aforementioned occurrences.

Another military policeman, Specialist D. E. Murphy, testified that he, Sergeant McCrady, and Sergeant Whitbread, were driving back to their headquarters at about 3:15 p. m. on March 20, 1967, when they saw a man run out of the building at 8th and Spruce carrying a purse; that as he ran down the street he dropped the purse; that he got out of the car and pursued the man on foot and never lost sight of him until he was apprehended; that as defendant neared 10th and Spruce he tried to put a purse (billfold) in the sewer there; that as soon as he attempted to put the purse in the sewer he stopped running and started walking, and shortly thereafter was apprehended by Sergeants McCrady and Whitbread; that defendant was taken back to the Royal Paper Company building where he was viewed by a woman standing on the sidewalk. This witness identified defendant in the courtroom as the man he had chased on the afternoon in question.

A police officer, William Weidler, testified that on March 20, 1967, at about 3:15 p. m., he was driving on Spruce Street and saw a Negro man being pursued by three or four men, some of whom yelled that the man had stolen a purse; that he then drove to 10th and Spruce where he observed this person in the custody of two men who identified themselves as military police; that he arrested the defendant and was directed to a sewer opening at 10th and Spruce by Military Police Officer Murphy who said he saw the man attempt to throw something down the sewer; that at the edge of the sewer opening he found a billfold containing $66.30 which he held as evidence. The officer identified the defendant in the courtroom as the man he arrested on the occasion described in his testimony.

Defendant offered no evidence.

The first point briefed by defendant is that the trial court erred in failing to sustain his motion for a mistrial which was based on the contention that the argument of the circuit attorney constituted a comment on the failure of defendant to testify. The transcript discloses that after the circuit attorney had reviewed and outlined the testimony of the witnesses for the State, he said: "This evidence presented on the part of the State to show the guilt of this defendant is completely uncontradicted and undenied." The defendant's attorney (outside the hearing of the jury) then made the following motion: "The defendant moves for a mistrial on the grounds that the counsel for the State has used the word 'undenied.' Now, the only person to whom that would be applicable would be the defendant and this, therefore, constitutes a comment on the fact that the defendant is not taking the stand." The motion was overruled.

Supreme Court Rule 26.08, V.A.M. R. (which is the same as § 546.270) provides, in part, as follows: "If the accused shall not avail himself or herself of his or her right to testify * * * it shall not be * * * referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place." As was pointed out in the case of State v. Hayzlett, Mo.Sup., 265 S.W.2d 321, there is a long line of cases in this state which hold that a reference to the failure of the defense to offer any evidence is not a violation of the statute. By its express terms the statute (Rule) prohibits a reference to the failure of the *accused* to testify. See also, State v. Michael, Mo.Sup., 361 S.W.2d 664; State v. Romprey, Mo.Sup., 339 S.W.2d 746, and State v. Murray, Mo.Sup., 280 S.W.2d 809. Defendant seeks to place special signficance upon the fact that the word "undenied" was used. We held, however, in the early case of State v. Ruck, 194 Mo. 416, 92 S.W. 706,

that there was no violation of the statute when the prosecutor, after reviewing the evidence, stated, "Here we have testimony undenied, undisputed * * *." To like effect see State v. Powell, Mo.Sup., 357 S.W.2d 914 [5].

█ It is further contended that the statement complained of should be held to violate the statute because the evidence of the State's witnesses could only have been denied or contradicted by defendant. In support of that contention defendant has cited an annotation in 14 A.L.R. 3rd 723, 728, wherein it is said that "[M]any cases support the conclusion that if the prosecution evidence characterized as uncontradicted or denied [undenied] is such that only the defendant himself could or would contradict it, an improper reference to the defendant's failure to testify is shown * * *." See also, State v. Snyder, 182 Mo. 462, 82 S.W. 12. However, we do not think that a jury in this case reasonably would have concluded that defendant was the only person who could have contradicted the State's witnesses. For example, the two salesmen who pursued the thief for a time did not testify for the State. They were available to defendant and conceivably might have testified that defendant did not resemble the person they had pursued. Also, it is significant that the events detailed involved an area of two blocks in downtown St. Louis at 3:15 p. m. Although we recognize that one witness stated that he did not see anyone else in the area we, nevertheless, are of the opinion that the jury could reasonably have concluded that other witnesses might have been available who could have testified regarding the identity of defendant.

As indicated, we rule that the heretofore quoted statement of the circuit attorney did not constitute reversible error.

█ The final contention of defendant is that we should reverse the judgment and grant him a new trial because of the prejudicial effect of Miss Rosen having been permitted to identify him at the trial when there had been a prior improper pretrial identification after he had been taken into custody. In this connection we note that one witness stated that Miss Rosen first viewed defendant on the sidewalk in front of the building where she worked. She testified, however, that she first identified him at the "police station" or "court building" about 30 minutes after the occurrence. There is no indication that he was in a line-up, or that he had counsel at the time of the pretrial identification. Defendant has cited United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, but those cases have no application because they were decided after this case was tried. In Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, it was held that those cases would not be applied retroactively.

█ Defendant also concedes that no objection was made in the trial court to the evidence now complained of. We are asked to review the matter as "plain error" under S.Ct. Rule 27.20(c). We are unable to see anything in the circumstances of this case which would indicate that the manner in which Miss Rosen identified defendant resulted in "manifest injustice" or a "miscarriage of justice". We accordingly see no reason for granting any relief under Rule 27.20(c) and this point is therefore ruled against defendant.

An examination of the record as required by S.Ct. Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

SEILER and STORCKMAN, JJ., concur.

HENLEY, P. J., not sitting.