**CITY OF KENNETT, a municipal corporation, Plaintiff-Respondent-Appellant,**

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION, Defendant-Appellant-Respondent.**

No. 62202.

Supreme Court of Missouri, En Banc.

Jan. 13, 1981.

Wendell W. Crow, Kennett, for plaintiff-respondent-appellant.

John Ashcroft, Atty. Gen., Brenda Engel, Asst. Atty. Gen., Jefferson City, for defendant-appellant-respondent.

Albert J. Yonke, Kansas City, for amicus curiae.

HIGGINS, Judge.

The Labor and Industrial Relations Commission and the City of Kennett appeal a judgment which reversed and remanded for reconsideration prevailing wage determinations made by the Commission for street, water and sewer system improvements in Kennett. This Court accepted transfer of the case prior to opinion from the Court of Appeals, Southern District. Mo.Const. art. V, § 10. The principal question is whether the Commission's determinations are sup-

ported by competent and substantial evidence on the record. The judgment is reversed and the cause is remanded for a judgment affirming the Commission's decision.

■ This case is governed by the Prevailing Wage Act, §§ 290.210–290.340, RSMo 1978, enacted by the General Assembly in 1957. Under the Act, all workmen employed by private contractors in the construction of public works must be paid not less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed. Section 290.230; *City of Joplin v. Industrial Commission*, 329 S.W.2d 687, 692 (Mo. banc 1959). "Locality" in this case is the county where the physical work is performed. Section 290.210(3). Before advertising for bids or undertaking construction, public bodies are required to request the Commission to determine the prevailing rate of wages for workmen for the class or type of work called for by the public works. Section 290.250. In making a determination, it is necessary for the Commission to ascertain and consider the applicable wage rates established by collective bargaining agreements and the rates that are paid generally within the locality. Section 290.260(1). The Commission established rules and regulations contained in the Code of State Regulations which delegated to the Division of Labor Standards the responsibility of administering the prevailing wage law. *See* § 290.240(2); 8 C.S.R. 30–1.010. The Division initially responds to requests for wage determinations, 8 C.S.R. 30–3.010; the Commission conducts hearings on any objections, and issues final determinations as it believes the evidence warrants. Section 290.260(6); 8 C.S.R. 20–5.010. A decision of the Commission is subject to review under the provisions of Chapter 536, RSMo 1978. Section 290.260(7).

The city engineer of Kennett, Missouri, filed two wage determination requests with the Division of Labor Standards; one for water and sewer projects, and one for asphalt surfacing of existing graveled streets.

The Division issued wage determinations which listed the prevailing rate of wages for classes of workers to be employed on the projects. These wage determinations came from a master list of wage and hour history which is maintained and updated from time to time by the Division. The City sent a notice of objection to the Commission concerning the wage determinations. The Commission notified the City that a hearing on its objection would be conducted in Jefferson City. After receiving the notice of objection, the Division undertook a survey of construction activity in Dunklin County to ascertain whether the wage determinations were accurate. The hearing was held, and the Commission thereafter issued final wage determinations for the Kennett projects. The City filed a petition for review of the Commission's wage determinations in the Circuit Court of Dunklin County. That court concluded that the Commission failed to determine the prevailing rates as contemplated by §§ 290.-210–290.340, and remanded the cause to the Commission for reconsideration and receipt of additional evidence.

Upon review this Court must determine whether the action of the agency violated constitutional provisions; exceeded statutory authority or jurisdiction; was unsupported by competent and substantial evidence upon the record as a whole; was unauthorized by law; was predicated upon unlawful procedures, or without a fair trial; was arbitrary, capricious or unreasonable; or involved an abuse of discretion. Section 536.140(2).

The following evidence was before the Commission at the hearing upon the City's objection to the Division's preliminary wage determinations:

Voluminous payroll records of various contractors on construction projects in Dunklin County in 1977 and 1978 which when compiled reflected basic wage rates for laborers at $7.75 to $10.50 per hour,

rates for teamsters at $8.10 to $9.63 per hour; and rates for operating engineers at $8.30 to $10.45 per hour; [1]

Collective bargaining agreements applicable to Dunklin County which reflected wage rates for operating engineers at $8.65 to $10.05 per hour, rates for teamsters at $8.80 to $9.17 per hour, and rates for laborers at $8.55 to $9.20 per hour;

The testimony of Don E. Robinson, president and manager of Kennett Concrete, Inc., which indicated he paid wages of $2.75 per hour for laborers and $4.00 per hour for screedmen in the construction of parking lots and driveways; and

The testimony of Gary Don Young, partner in Young's Construction Company, which indicated that the wages paid by his company for construction of water and sewer mains was $4.00 per hour for laborers, $5.00 per hour for pipe layers, and $6.00 per hour for the operator of the backhoes, boring machine and crawler tractor.

In its findings, the Commission noticed this evidence; recognized that most of the Division's evidence reflected wages for highway, county, road and bridge construction projects; determined this heavy construction to be similar to the proposed projects; and stated that "in weighing the evidence we find that the greater weight of the evidence presented supports the wage determinations of the Division of Labor Standards": $10.90 per hour for carpenters, $9.05 to $10.45 per hour for operating engineers, $8.80 to $9.17 per hour for teamsters, and $8.55 to $9.30 per hour for laborers.

■ Section 290.210(5) defines prevailing wage as "wages paid generally, * * * to workmen engaged in work of a similar character * * *." "Similar" does not mean the same or identical; any work in heavy construction that could reasonably be found to be similar should be considered. *City of Joplin v. Industrial Commission, supra* at 695.

■ Although there was evidence presented to the Commission that the quality of work and the type of workmen and machinery to be utilized by the City of Kennett was not the same as that utilized on State Highway Commission projects, this is a matter for the Commission's determination requiring the exercise of its discretion. This Court has no authority to weigh the evidence and to determine for itself the facts of the case. *United Brotherhood of Carpenters and Joiners v. Industrial Commission*, 363 S.W.2d 82, 89 (Mo.App.1962).

As stated in *Board of Education v. Shank*, 542 S.W.2d 779, 781–82 (Mo. banc 1976):

In reviewing an administrative decision on evidentiary grounds, the court considers all evidence before the board [Commission], but its inquiry is limited. The reviewing court may only determine whether the board [Commission] could reasonably have made its findings and reached its result or whether the decision was clearly contrary to the overwhelming weight of the evidence. * * * The court may not substitute its judgment on the evidence and may not set aside the board's [Commission's] decision unless it is not supported by competent and substantial evidence on the whole record. In addition, the evidence must be considered in a light most favorable to the board's [Commission's] decision, together with all reasonable inferences which support it. * * * If evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding. * * * Also, the determination of the credibility of witnesses is a function of the administrative tribunal. * * *

■ So considered, the Commission's wage determinations were reasonable and supported by substantial and competent evidence.

---

1. Kennett Concrete Company payroll records indicated that the rate of pay for a laborer for paving various parking lots was $2.75 per hour on one job and $4.00 per hour on another, and $3.00 per hour and $3.25 per hour for operating engineers.

The City contends that the Prevailing Wage Law is being administered in an unconstitutional manner in that the Division has created only two classifications of construction thereby resulting in an unreasonable and arbitrary classification constituting a deprivation of equal protection under U.S.Const. amend. XIV, and Mo.Const., art. I, § 2. The City argues that the two classifications of the Division do not properly include a classification for the type construction contemplated by the City on its proposed projects.

Bruce Ellis[2] testified that in issuing wage determinations the Division breaks down all construction into building construction, consisting of "office buildings, hospitals, hotels, motels, etc.," and heavy construction, consisting of "dams, flood control, reservoirs, water and sewage treatment plants, highways, bridges, overpasses and things of that nature." The proposed projects of the City were listed as heavy construction.

█ The City has failed to develop how the classification utilized by the Division rises to the level of constitutional infirmity. The classifications were used only for the preliminary wage determinations. The Commission issued the final wage determinations only after considering all of the evidence and concluding that the preliminary wage determinations accurately reflected the prevailing wage rates for work on the Kennett projects.

The City challenges the way in which the initial wage determinations by the Division were made. It contends that the Division merely copied provisions of various collective bargaining agreements, ignoring other relevant factors including private construction in Dunklin County, and that the determinations based upon the collective bargaining agreements applicable to many counties in the area violated the statutory requirement of considering Dunklin County individually rather than as a "locality" of 50 or more counties.

█ The relevant wage determinations to be considered here are not the preliminary determinations issued by the Division, but the final wage determinations issued by the Commission; the relevant inquiry is whether the Commission considered all relevant factors and whether the wage determinations are supported by substantial and competent evidence on the whole record, including material evidence acquired after issuance of the preliminary wage determinations and presented the Commission at the hearing upon the City's objection to the preliminary wage determinations. *See Board of Education v. Shank, supra; City of Joplin v. Industrial Commission, supra* at 695; and *Woodman Engineering Co. v. Butler,* 442 S.W.2d 83, 86 (Mo.App.1969). As stated earlier, the Commission considered the collective bargaining agreements and payroll records of various contractors on private and public construction projects in Dunklin County. It cannot be said that the Commission failed to consider wages paid generally in the county including wages paid on private construction projects, or that the Commission's decision was unsupported by substantial and competent evidence.

The City contends that the Commission exceeded its statutory authority and issued the wage determinations upon lawful procedure by failing to follow the mandates of § 290.260(5) and 8 C.S.R. 20–5.010(4). Section 290.260(5) after which the regulation is patterned states:

At the hearing the department shall first introduce in evidence the investigation it instituted and the other facts which were considered at the time of the original determination which formed the basis for its determination. The department, or the objector, or any interested party, thereafter may introduce any evidence that is material to the issues.

The City argues that "[n]o such investigation or evidence was introduced at the hear-

2. At the time of these wage determinations Mr. Ellis was the Assistant Director of the Division of Labor Standards, and was in charge of ad-

ministration and enforcement of the Prevailing Wage Law.

ing, and only copies of collective bargaining agreements were introduced into evidence in compliance" with the statute and regulation.

This contention ignores the prepared testimony of Mr. Ellis describing the procedure followed by the Division in making and issuing wage determinations. Mr. Ellis explained that the Division maintains records of wages being paid on construction projects in each county, and that those records contain information gathered by inspectors who periodically visit each county, collective bargaining agreements for an area, "Dodge" reports,[3] and state highway department contracts. These records are maintained continuously and are supplemented with additional wage information as it becomes available. From this information a current wage rate is posted to a master sheet which reflects the Division's current determination of wages for workmen within that county. When a request is made for a wage determination, the determination is issued based upon the wage rate shown on the master sheet. Included with the prepared testimony of Mr. Ellis were the collective bargaining agreements applicable to Dunklin County and the after acquired payroll records of contractors in Dunklin County which corroborated the Division's original wage determinations. Thereafter, the City introduced the testimony of its city engineer and prepared testimony of Don E. Robinson and Gary Don Young.

■ Accordingly, the Commission did not exceed its statutory authority and proceed under an unlawful procedure in issuing its final wage determinations.

The City challenges the administration of the Prevailing Wage Law contending that it was denied notice and opportunity to be heard relative the manner in which wage determinations are made because the wage determinations were merely verbatim copies of collective bargaining agreements to which the City was not a party.

■ This challenge is refuted by the record which indicates the City was accorded a full hearing upon its objection in which it was permitted to challenge the preliminary wage determinations by the introduction of evidence and the cross-examination of witnesses.

The City further challenges certain Commission rulings made during the hearing upon the City's objection to the wage determinations.

The City fails to demonstrate how these rulings were an abuse of discretion or deprived the City of a fair hearing upon its objection; a review of the record indicates that no abuse of discretion or unfairness resulted from the rulings.

The judgment is reversed and the cause is remanded with direction to enter judgment affirming the Commission's decision.

BARDGETT, C. J., and DONNELLY, RENDLEN, SEILER and MORGAN, JJ., concur.

WELLIVER, J., concurs in separate concurring opinion filed.

WELLIVER, Judge, concurring.

I concur.

While I have no doubt that the principal opinion correctly applies the standard of review to the record before us which is mandated by our statutes and enunciated by our cases, nevertheless it is with reluctance that I concur. It would seem that the Prevailing Wage Act, §§ 290.210–290.340, RSMo 1978, as it has been administered by the Industrial Commission, has in effect, made the highest wage in the state the prevailing wage for virtually every county in the state.

Though sympathetic with the position in which the City of Kennett now finds itself, I am not unaware of how that City and other local governments got into this situation. So long as the so-called "free federal

3. "Dodge" reports are construction reports printed by county by county which include building construction and heavy and highway construction performed by public body or private individual.

dollar" flowed in the form of grants, subsidies, matching dollars and revenue sharing, resistance to legislative acts such as this by local governments and their associations only could be described as feeble or token. Nor have the taxpayers who must pay the bottom line been free from fault. In the expanding and gently inflating economy of the late fifties, sixties and seventies, even taxpayer resistance to acts such as this was noticed mostly by its absence.

Current inflation rates and the resulting economic crisis for local governments now appear to be forcing appellant and other local governments to take a new look at such things as the "prevailing wage" and the public's demand that they get "more for the tax dollar". In this background, I feel obligated to point out that until substantially stronger and more favorable factual records can be presented to the courts, judicial relief seems unlikely, and then only on a case by case basis.